UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
AT DAVENPORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:24-cr-16 |
| | ) | |
| vs. | ) | **DEFENDANT'S SENTENCING** |
| | ) | **MEMORANDUM AND MOTION FOR** |
| | ) | **DOWNWARD VARIANCE** |
| IVAN GALVAN, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW Defendant Ivan Galvan, by and through his attorneys Eric D. Tindal of Keegan, Tindal, & Jaeger, and for his Sentencing Memorandum and Motion for Downward Variance addressing the factors to be considered in imposing Defendant's sentence under 18 U.S.C. § 3553(a), states as follows:

## A.  WITNESSES AND EXHIBITS

Defendant anticipates calling witnesses.

a.    Defendant's Aunt Grace Pulido

b.    Defendant's Counselor Katryn Duarte

Defendant will submit letters of support.  Defendant does not anticipate further exhibits.

## B.  OBJECTIONS TO THE PSR AND GUIDELINES ISSUES

There are no objections to the PSI which impact the sentencing guidelines.   It does not appear the minor factual objections/clarifications will require any evidence to be presented.

## C.  DEFENDANT'S CHARACTERISTICS AND "NEEDS" OF THE SENTENCE IMPOSED

*Background*

Defendant respectfully requests the Court vary downward and suggests the court issue a sentence of 60 months.  Further, the defendant requests the Court permit him to self-report.  In support the defendant notes the following information.

On November 12, 2021 Johnson County Sheriff's Department executed a search warrant at Defendant's home in Johnson County, Iowa.  Out of the 16 electronic items seized, 2 contained Child Sex Abuse Material.  (PSI, p. 6[1] ¶ 21).[2]  The total number of items of Child Sex Abuse Material consisted of 60 images and 91 videos.  The last modified date for these images was March 12, 2019.  The last accessed date was October 29, 2021.  (PSI, p. 6 ¶ 23-24).

On March 2024 the defendant was indicted for Receipt of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1).  On July 1, 2024 the defendant entered his guilty plea to said count.  (PSI, p. 3 ¶¶ 1, 3).  Largely due to the manner in which videos are counted, the total number of images in this matter well exceed 600.  (PSI, p.4,¶ 6; p. 6, ¶ 24).

The defendant's childhood was defined by characteristics of poverty and substance abuse.  (PSI, p. 10, ¶ 58).  Ivan has never known his father.  Ivan's mother struggled with alcoholism and homelessness.  *Id.*  When the defendant was five years old, he was sexually assaulted by an older cousin.  (PSI, p. 10, ¶ 59; Exhibit C).  Only recently has Defendant began processing those traumas and how they impact his emotional state and the choices he has made as an adult.

Currently the defendant is engaging in significant prosocial activities.  The defendant has maintained sobriety for approximately three years.  (Defendant's Exhibit A, B).  As stated by

---

[1] Page number reflects the electronic file page at the top of each page rather than the document page number at the bottom of each page.

[2] 10 of the items could "not be evaluated" for reasons not set forth in the PSI.

Defendant's sister-in-law, "[t]he most change I've seen in Ivan was when he stopped his alcohol abuse and you could see a shift in him and there was a goal to get better."  His friend Kimling Brown noted "[Ivan] has been active in substance abuse programs and communities where he can help others through the mutual expression of experiences.  He has been brave enough to seek help for his mental health by committing to seeing a sexual abuse counseling specialist regularly." (Exhibit C).  And Counselor Katryn Duarte has observed Ivan has actively participated in the RVAP program and other programs with a "sincere desire to improve the quality of his interactions with others."  (Exhibit D).

By all accounts the last three years have displayed significant personal growth, maturity and sobriety.  Defendant's last drink was November 11, 2021.  Although there is little doubt law enforcement's search on November 12, 2021 was the triggering event, for more than 2 years Ivan could not know he would be indicted.  This suggests the event caused Ivan to take a personal inventory of his life and finding the person he is and wanted to be, rather than a recovery based upon penological considerations.

*Argument*

The undersigned argues lengthy incarceration is not necessary to promote respect for the law, to afford adequate deterrence, or to protect the public.  18 U.S.C. § 3553(a)(2)(A)–(C).  While Defendant recognizes incarceration is the eventual outcome of this sentencing hearing, the period of incarceration recommended by the Guidelines is greater than necessary to do justice and to achieve the goals of sentencing.  To the contrary, the totality of the circumstances, including the nature and circumstances of Defendant's background, suggest a downward variance is appropriate and sufficient to achieve the goals of sentencing.  The sentencing guideline calculation represents the "ordinary" case before the court and thus starts as nothing more than a "starting point" in

selecting a sentence. *Kimbrough v. United States*, 552 U.S. 85, 108 (2007). Courts are therefore instructed to consider atypical factors. Under 18 U.S.C. 3553(A)'s "parsimony clause," it is the sentencing court's duty to "impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth at 18 U.S.C. § 3553(a)(2)."

Recidivism considerations should be one of the primary consideration in the duration of a sentence. 18 U.S.C. § 3553(a)(2)(B)–(C). Complete rehabilitation is not only possible in this case, such rehabilitation is actually more likely than not under the specific facts of this case.

The Constitution's purpose for giving discretion to district courts is at its peak where a court is working with guidelines which, unless applied with great care, can lead to unreasonable sentences which are out of alignment with the principles § 3553(a) requires and espouses. The danger generated by strict adherence to the guideline is at its peak when the guidelines themselves depart from an empirical approach. *Rita v. U.S.*, 551 U.S. 338, 349 (2007) (explaining why the Commission generally adopted an empirical approach in an effort to embody the goals of both uniformity and proportionality which were frequently competing goals at odds with one another).

Numerous commentators and courts have noted that the Child Pornography Guidelines are a break from empirical principles which were supposed to undergird the structure of all sentencing guidelines. The result are the imposition of enhancements and other factors which aggravate the guideline range in run of the mill cases. See *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of Child Pornography Guidelines*, January 1, 2009 at 4-9 available at https://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2016/report_stabenow.pdf. (last accessed on November 14, 2024).

The Commission has noted that in the arena of child pornography the "specific directives to the Commission to amend the guidelines make it difficult to gauge the effectiveness of any

particular policy change, or to disentangle the influences of the Commission from those of Congress." United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform,* 2004 at 73, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/15-year-study/15_year_study_full.pdf (last visited November 14, 2024).

Judge Mark Bennett has detailed in several opinions, such as *Beiermann,* how the Guidelines for sex offenses fail to reflect the Commission's role to use fact over feeling, and how the guidelines fail to reflect the best information for determining an appropriate sentence for a particular offender.

Judge Bennett is far from being alone in dissatisfaction with the child pornography guidelines. More than 15 years ago federal judges were surveyed about the state of the federal guidelines sentencing system. A majority of federal judges identified three crimes which produced sentences which were too harsh. "For those three particular crimes, the dissatisfaction rate was surprisingly high and virtually identical: 70% for possession of crack cocaine, 70% for possession of child pornography, and 69% for receipt of child pornography." Stabenow, Troy, A Method for Careful Study: A Proposal for Reforming the Child Pornography Guidelines, *Federal Sentencing Reports*, Vo. 24, No. 2 (December 2011).[3]

Counsel suggests the reason for the guidelines departure from objective and quantifiable data (empirical) is obvious, human nature and the repulsiveness of these offenses. Child

---

[3]

https://www.fd.org/sites/default/files/criminal_defense_topics/essential_topics/sentencing_resources/deconstructing_the_guidelines/fsr-2011-24-2-108.pdf  (Last accessed November 14, 2024).

Pornography incites a reasonable emotional reaction. These crimes are viewed as repulsive and immoral, more so than almost any other offense.

Even the U.S. Supreme Court and Iowa Supreme Court have fallen victim to repeated misconceptions concerning sex offenses which are unsupported by objective facts. In 2005, the Iowa Supreme Court dealt with an issue of first impression, the residency restrictions placed upon sex offenders. *See State v. Seering*, 701 N.W.2d 655, 664 (Iowa 2005). Upholding the restrictions, the court gave a nod to the hardships the restrictions placed on Keith Seering and his family, who had limited financial resources. But Seering's constitutional arguments were rejected because "the risk of recidivism posed by sex offenders is 'frightening and high,'" as "numerous authorities have acknowledged." The only authority cited for the judicial finding was Justice Kennedy's opinion in *Smith v. Doe*, 538 U.S. 84 (2003). Justice Kennedy's first statement on these issues arose in *McKune v. Lile*, 536 U.S. 24, 34 (2002), in which Justice Kennedy wrote the recidivism rate "of untreated offenders has been estimated to be as high as 80%." He further described such recidivism as "frightening and high." *McKune*, 536 U.S. at 34. In 2015, Professors Ira Ellman and Tara Ellman published "'Frightening and High' the Supreme Court's Crucial Mistake About Sex Crime Statistics." Constitutional Commentary, Vol. 30: 495. The article forensically examines the sources of Justice Kennedy's recidivism findings, which have risen to accepted judicial fact. Professor Ellman found the oft cited statistic was not a statistic at all. Rather, it was a bare assertion by a counselor in Oregon who ran a sex offender treatment program.

> He is a counselor, not a scholar of sex crimes or re-offense rates, and the cited article is not about recidivism statistics. It's about a counseling program for sex offenders he then ran in an Oregon prison. His unsupported assertion about the recidivism rate for untreated sex offenders was offered to contrast with his equally unsupported assertion about the lower recidivism rate for those who complete his program.

*Id.* at 498.

Regardless of the validity of one's emotional reaction, sentencing is premised upon goals of rehabilitation in addition to mere retribution and punishment.  Toward this end, sentences are to be tied out to specific goals and premised upon scientific research and logic.  *See* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."); *Kimbrough v. United States*, 552 U.S. 85 (2007) (Commission's usual practice was to develop Guideline sentences "using an empirical approach based on data about past sentencing practices, including 10,000 presentence investigation reports.").  Examining research related to sex offenders, however, provides information contrary to the emotional reaction:  sex offenders, like Defendant here, have exceptionally low recidivism rates.

Further, the Guidelines for sex offense cases "[do] not exemplify the Sentencing Commission's exercise of its characteristic institutional role and empirical analysis, but was the result of congressional mandates, often passed by Congress with little debate or analysis." *U.S. v. Beiermann*, 599 F.Supp.2d 1087, 1100–04 (N.D. Iowa 2009) (J. Bennett) (collecting cases) ("I join my brethren who find that the child pornography guideline, U.S.S.G. § 2G2.2, which is the result of congressional mandates, is entitled to considerably less deference than other guidelines that *are* based on the Commission's exercise of its institutional expertise and empirical analysis. Perhaps in somewhat of a rush to appease the publics and politicians' noted and continued zeal for harsher sentences in child pornography cases, many courts have claimed that harsher sentences in child pornography cases will somehow reduce both the demand for and availability of child pornography on the Internet.  I wish it were that simple. … While the public's outcry for harsher sentences in child pornography cases is certainly understandable, there is not a single sliver of evidence in this sentencing record remotely supporting the notion that harsher punishment would

reduce the flow of child pornography on the internet. From the rapid growth of these cases that

my colleagues around the country and I are seeing, we cannot sentence Internet users and sharers

of child pornography fast enough or long enough to make a dent in the availability of such material

on the Internet. This does not mean that [defendant] should not receive a lengthy sentence for his

criminal conduct, but it does mean that the sentence should not be longer simply to satisfy an

objective that, while laudable, is not being achieved according to any empirical or other evidence

in this case or, for that matter, empirical evidence in any other case or course that I am aware of.

… I find that U.S.S.G. § 2G2.2 should be rejected on categorical, policy grounds, even in a "mine-

run" case, and not simply based on an individualized determination that it yields an excessive

sentence in a particular case."). Because the Guideline applicable for this offense fails to reflect

the Commission's role and fails to adequately consider scientific research and goals of sentencing,

variance is appropriate.

 In June of 2021 the United States Sentencing Commission published a report titled

"Federal Sentencing of Child Pornography Non-Production Offenses."

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-

publications/2021/20210629_Non-Production-CP.pdf (Last viewed November 14, 2024). In the

report the Commission noted their previous determinations published in 2012 which suggested

significant legislative and administrative changes to the guidelines. The changes included a

recommendation to Congress that "Congress's prior rationale for punishing receipt more

severely than possession had largely been eliminated." *Id.* at p.2. That exact detachment is

observable here. The distinction between possession and receipt as a factual matter is nearly

undetectable. Conversely the sentencings for the same conduct are statutorily miles apart where

one has no mandatory minimum with a 10 year statutory maximum compared to the 5 year mandatory minimum and 20 year maximum at work here.

Counsel could continue with case after case, report after report, and statistic after statistic about the child pornography guidelines. There is little use in presenting such information to the point of it becoming white noise. As this Court is aware, the Court can sentence below the Guidelines based solely upon policy disagreements with the Guidelines. *See e.g. Spears v. U.S.*, 555 U.S. 261, 263–67 (2009) (*per curiam*); *U.S. v. Kimbrough*, 552 U.S. 85, 109–110 (2007). "In Kimbrough the Supreme Court held that it is not an abuse of discretion for a district court to vary from the Guidelines based on its policy disagreement concerning the disparity between crack and powder cocaine sentences." *U.S. v. Battiest*, 553 F.3d 1132, 1137 (8th Cir. 2009). The United States Supreme Court has permitted trial courts to reject the guidelines on categorical policy grounds. Stated differently, there is no need for the sentencing court to make an individualized determination an excessive sentence is yielded in a particular case. *U.S. v. Beiermann*, 599 F.Supp. 2d 1087 (citing *Spears*, 555 U.S. at 262).

One does not, however, need to achieve a policy disagreement to find reason to sentence below the guidelines. Rather, the Court must only ask whether Ivan and Society will be better off if he's incarcerated more than 60 months. This is a man who has used the years between the search of his home in 2021 and the indictment in 2024 well. He has used those years to get sober. He has used those years to get mental health treatment. He has used those years to become a better husband, father, son, and neighbor. Reliance on the Child Pornography Guidelines for this defendant results in an unduly harsh sentence. A sentence of 60 months is adequate to balance all of the factors the Court considers.

### D. CONCLUSION

WHEREFORE Defendant respectfully requests he be sentenced in accordance with the foregoing.

Respectfully submitted,

*/s/ Eric D. Tindal*
Eric D. Tindal
Keegan, Tindal & Jaeger
319 E. Bloomington St.
Iowa City, IA 52245
Telephone: (319) 887-6900
Facsimile: (319) 688-2754
Email: eric@keeganlegal.com

**ATTORNEYS FOR DEFENDANT**

**Certificate of Service**

The undersigned certifies that the foregoing instrument was electronically filed on November 14, 2024, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to the above cause and to each of the attorneys of record herein at their respective addresses disclosed on the pleadings.

*/s/ Eric D. Tindal*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:24-CR-16 |
| | ) | |
| vs. | ) | **DEFENDANT'S SENTENCING** |
| | ) | **EXHIBITS** |
| IVAN GALVAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW Defendant Ivan Galvan, by and through his attorneys, Eric D. Tindal, of

Keegan, Tindal, & Jaeger, and for his Sentencing Exhibits, attaches hereto the following exhibits:

A.  Letter: Ana Galvan-Munguia

B.  Letter: Josephine Zamora-Pham

C.  Letter: Kimleng Brown

D.  Letter: Katryn Duarte

E.  Letter: Truong Pham

F.  Letter: Cecilia De Minchoca

G.  Letter: Amanda Pulido Garcia Zamora

Respectfully submitted,

*/s/ Eric D. Tindal_____*
Eric D. Tindal
Keegan, Tindal, & Jaeger, PLC
319 E. Bloomington Street
Iowa City, IA 52240
Phone: 319-887-6900
Eric@keeganlegal.com

**ATTORNEYS FOR DEFENDANT**

Certificate of Service
The undersigned certifies that the foregoing instrument was electronically filed on November 14,
2024, with the Clerk of Court using the CM/ECF system, which will send notification of such

filing to all parties to the above cause and to each of the attorneys of record herein at their respective addresses disclosed on the pleadings.

*/s/ Eric D. Tindal*

This letter is regarding of Ivan Galvan Case Number 3:24-CR-00016

Dear Honorable Judge Ebinger,

My name is Ana C Galvan-Munguia, I am the Wife of Ivan Galvan. I've met my husband since 2003-2004, at Horace Mann Elementary school in Iowa City IA. We even lived in the same neighborhood at Forest View Trailer Court, where we played as kids. We officially started dating in 2006. Our journey began like any other teen couple would, but of course with many challenges along the road. When Ivan was a teen he was introduced with his first alcohol beverage, The thought of keeping up with friends or feeling the high in life or even numbing the pain, was something a young teen thought wouldn't hurt. Little did we know, it would effect us later in life.

We were really young when we had our first child, but he never gave up! Ivan strive to provide for our son, as Ivan never had a father or a father figure to guide him. Ivan always mentioned that he would never leave his child. He'd say how he wants his children to look up to him or find guidance as he's never had it. He's an only child, and his mother was always busy to even keep any eye on him. I think that's why he's always trying his best to give love and care for his children.

After having our second child, Ivan worked very hard to provide us with a new home since our family was growing. Everything was set, we had a good routine for a while, a good thing for us.

Over the years I could tell Ivan was spiraling with alcohol almost every day. At one point he had depression, due to his past trauma Or feeling like a failure in life, He'd mentioned how drinking would help numb the pain. At times he would come home very intoxicated or black out. He did not acknowledge that he had a problem. At times I felt like I was losing him, and it got to the point where my husband and I separated. The reason was the obvious, I didn't want our children to see their father like this.

I believe Ivan realized that he was going to lose his family if he didn't make changes in his life. This was not the example he wanted to show our children. It was a slow process but he was making changes. After I got pregnant with our third child, we rekindle and slowly rebuild our relationship. I think after being pregnant I felt Ivan really stepping up. The withdrawal that he was going through the mindset and the mind will he had to endure was very hard! At times I thought he would relapse, but he never did, he never gave up! With the help of our Family, and friends he goes three years without touching alcohol

The difference between then and now is completely different in a very good way. I believe Ivan has acknowledged the poor actions he's made while abusing alcoholism played a

Defendant's Exhibit A

huge part in his daily life. My husband continues to practice sobriety and he has recently seek help maintaining his sobriting through a substance abuse program, and counseling.

Ivan is kind, funny, wise, humble, hard working, respectful and responsible person. Ivan takes full responsibility, accountability and hopes this lesson teaches our children and those around us the dangers of untreated substances abuse and more importantly that accessing C.S.A.M. is not a victimless crime. I believe my husband has the ability to rehabilitation and be the good man that I choose to be with. If you have any questions please contact me at

███████████████    ████████████

████████████████

████████████

USA V. Ivan Galvan, Case No. 3:24-CR-00016

Dear Judge Ebinger, My name is Josephine Zamora-Pham. I am Ivan Galvan's Sister in law and I am related to Ana Munguia. I wanted to write a letter in support of Ivan as I have known him for a very long time. He came into our family's lives when he was 15 so I have known him for about 16 years. I don't have any brothers but Ivan was able to fill that spot as a big brother. Ivan and my sister were able to take me to chicago for my very first concert as a christmas present a couple years ago which I was able to make the best memories. Ivan has always been very dependable and diligent over the years. I knew Ivan had an issue with alcohol and like many places it gets dismissed and glossed over. Fortunately there was a spark in Ivan to get sober and many of our family members noticed and were very proud of this change that was happening. I had seen Ivan work in different trades growing up from working as a Hotel Manager, doing Lawn Care, being a sushi chef, Roofing and building frames for houses. The most change I've seen in Ivan was when he stopped his alcohol abuse and you could see a shift in him and there was a goal to get better. Ivan has always been knowledgeable and insightful and is able to make do with what is thrown in front of him like when starting a new trade. Like what are ways to get better and work up the ladder to get more knowledge and be efficient in the trade he is in, so in the long run he can support his family.

Josephine Zamora Pham

**Kimleng Brown**



November 6th, 2024

**Honorable Rebecca Ebinger**
Chief United States District Judge
123 East Walnut Street
Suite 300
Des Moines, IA 50309

Subject: Ivan Galvan, Case No. 3:24-CR-00016

Dear Judge Ebinger

I am writing to you on behalf of my close friend, Ivan Galvan. I've known Ivan for several years as we've worked together at multiple jobs and our families are close. Ivan has always been my first choice in every job where I've been asked to bring on an employee I can count on. I don't keep many friends anymore as I've grown older and have prioritized my family and my career over my social life, but Ivan has been one of the very few that I have maintained because he has earned my trust many times over.

Working as sushi chef in our twenties, we became fast friends. The job oftentimes felt like a never-ending alcohol fueled battle, and we were comrades-in-arms. He knew me when I was at my lowest and helped me stand back up. He's the one friend who helped me move. He's the one friend that showed up to my son's first birthday party. He's the one friend I was able to fully open up to when I was struggling with heroin addiction. Ivan is like a brother to me. He is far from perfect, but he is a man I know I can trust with my life. He is one of the reasons I'm still alive.

Ivan has had to overcome many trials during the time that I've known him. At the beginning of our friendship we were both deeply consumed by alcoholism and I am glad to be able to say that we have both survived the ordeal; largely through the help of counseling and programs. During our friendship, he has shared with me, in confidence, a history of childhood sexual abuse that he has struggled to come to terms with. This, among other traumatic events that he

Defendant's Exhibit C

has experienced in his life, serves to provide context for his struggle with addiction as well as the charge he is facing. He knows what he did is wrong. I know that he deeply regrets his actions as well as the impact his actions have had on the victims by receiving the material even once. What he did is something he will have to live with for the rest of his life.

Over the past 3 years Ivan has not tried to escape his crime. He has faced it head on and has been actively taking every step he can in the right direction. He has taken full ownership of his actions and has made substantial progress in making himself eligible to be reintegrated to society. He has been sober for 3 years now, which is an incredible achievement considering the depth of his addiction. He has been active in substance abuse programs and communities where he can help others through the mutual expression of experiences, He has been brave enough to seek help for his mental health by committing to seeing a sexual abuse counseling specialist regularly. He has, throughout this ordeal, maintained steady, full-time employment in order to support his family, despite the obvious obstacles associated with the crime he has been charged with.

The man I know is strong enough to overcome his traumas, and responsible enough to answer for his crimes and pay for them accordingly. He will do it for his family, for his community and for himself. I know in my heart that he can recover and that he is a person worth your consideration.

Sincerely,

Kimleng Brown

Your Name



108 River Street
Iowa City, IA 52246
319.335.6001 • Fax: 319.335.6057
Crisis: 319.335.6000 • 800.228.1625
www.rvap.org

Katryn Duarte
108 River Street
Iowa City, IA 52246
Katryn-duarte@uiowa.edu
319-335-6023

September 30th, 2024

Honorable Rebecca Ebinger
Chief United States District Judge
123 East Walnut Street, Suite 300
Des Moines, IA 50309

Re: Support Letter for Ivan Galvan
Case No. 3:24-CR-00016

Dear Honorable Judge Ebinger,

I am writing this letter in support of Ivan Galvan in my capacity as a Certified Victim Counselor
with the Rape Victim Advocacy Program (RVAP) in Iowa City, where I have worked for the
past eighteen years. In my role, I provide counseling and advocacy services to individuals who
have been impacted by interpersonal violence (past and present), including trauma from neglect,
family violence, and sexual abuse. From this professional perspective, I offer my thoughts
regarding Ivan's personal rehabilitation process.

I have worked with Ivan since March 30, 2024, until our last day September 30th, and witnessed
his genuine commitment to personal growth, accountability, and healing. Ivan has consistently
attended counseling sessions on time. He has engaged in profound, meaningful work, including
confronting complex topics related to his own experiences of past trauma, including childhood
neglect and sexual abuse. His openness to discussing these painful subjects reflects his earnest
desire to understand the root causes of his actions and his commitment to addressing the
underlying issues that contributed to his behavior.

In addition to his emotional and mental growth, Ivan has made significant progress in improving
his interpersonal relationships. I have observed a marked development in his ability to express
empathy, take responsibility for his actions, and hold himself accountable for the harm he may
have caused. Ivan's ability to engage in these challenging areas of his life demonstrates his
willingness to make positive changes and a sincere desire to improve the quality of his
interactions with others.

Moreover, Ivan has also sought help for substance use recovery through the Prelude Center in
Iowa City. His active participation in this program further reflects his determination to address
all aspects of his well-being and make long-lasting, positive changes in his life. In addition to his
efforts, Ivan is also the primary caregiver for his disabled and alcoholic mother. This




Defendant's Exhibit D



108 River Street
Iowa City, IA 52246
319.335.6001 ● Fax: 319.335.6057
Crisis: 319.335.6000 ● 800.228.1625
www.rvap.org

responsibility reflects his sense of commitment, empathy, and accountability to those closest to him, as well as his dedication to ensuring her well-being.

Based on my experience working with Ivan, I believe that he is open to change and actively acquiring the tools and support necessary to succeed. With continued guidance and resources, I am confident that Ivan has the potential to become a productive, law-abiding member of society.

I respectfully request that the Court consider these factors when determining Ivan's sentence. His ongoing commitment to rehabilitation, emotional growth, and positive change is evident. A sentence that includes continued support and treatment will allow him to continue his progress.

Thank you for your time and consideration. I would gladly provide any further information you may require.

Respectfully,

Katryn Duarte
Certified Victim Counselor
Rape Victim Advocacy Program (RVAP)



Defendant's Exhibit D

USA v. Ivan Galvan, Case No. 3:24-CR-00016

Dear Judge Ebinger. My name is Truong Pham. I am the husband of Josephine Pham and brother in law to Ivan Galvan. I have known Ivan for about 9 years. I first met Ivan while working at my family's restaurant when I was 16. When I started I had just come from Vietnam to the US. Ivan was able to train and teach me how to make sushi. When I met Ivan I wasn't very fluent in English as I had just moved to the states. I found Ivan has a very funny personality, he was also patient with me throughout my training. When we started working together he always made the working environment friendly and fun, we would make jokes with each other and became friends over the years. He would even introduce me to my now wife. When the restaurant changed ownership Ivan had left and I had stayed at the restaurant until I had also left. Ivan would later offer me a job at a bistro where there were only 3 working cooks. We would come up with our own menus and serve food. Ivan and I became closer over the years as I was dating Josephine. We celebrated holidays and birthdays together. Ivan has been a brother figure to me and has helped me through my adulthood. When covid happened the bistro had closed down and I eventually made my way to a new sushi restaurant and recommended Ivan to work with me again as he had lots of experience in this field and could trust him and once again we worked together. As always Ivan's funny personality makes a new workplace still as fun as I remember, people just like to have him as a company and so do I. After a while we worked together at the new restaurant. I decided that I wanted a different path for my career then I ended up quitting. Even though we do not work together anymore, we still keep in touch and keep each other updated in our life, and until this day. I still see him as a man that I met 9 years ago, always trying to light up somebody's day no matter the odds.
Any questions please contact my cell and email.

Truong Pham

Nov 12th, 2024

## IVAN GALVAN CASE NUMBER 3:24-CR-00016

To Honor Judge Ebinger

My name is Santos Cecilia De Minchoca  and I am mother-in-law for Ivan Galvan.

I have known Ivan and his family since 2003. We lived near each other, where many of the children from our neighborhood and my daughters would play together.

As time passed, I was very surprised that my eldest daughter Ana was dating Ivan. As any parent would, I was against it. And even more when my daughter became pregnant. I thought Ivan was unfit to care for a child, but to my surprise Ivan showed my husband and I dedication and support to his new born and to my daughter.  He earned our trust!

Ivan has many experience in working and I have seen how much knowledge he's absorbed. He's always trying his best, but one thing he did lack was he's alcoholism. My husband who once was an alcoholic has even tried to guide Ivan out of it. Ivan was young and living the moment but I mentioned to my daughter that he would Collapse if he continued to abuse alcohol.

Over the time my daughter decided to let Ivan go. We were in disbelief! How could this power couple give up!  I've said this before, when  influenced or  consumed he is not the same.  He was struggling with something personal and drowning himself  to hide his pain.

Ivan made a remarkable changes in his life! He is three year's sober and counting! Throughout the changes he's own up to his mistakes,  and when he told my husband and I the crime he committed we were very devastated but we consider him as our son and he knows what he did was wrong, he's taking Accountability For his actions. My Son-in-law is an example to my children and my grandchildren I trust Ivan,  he would not put anyone in harms way. He has three children, a wife and his only mother that he cares for.

Please if you have any questions don't hesitate to call (319)259-4835

From Santos Cecilia De Minchoca

Defendant's Exhibit F

Subject: Ivan Galvan
Case No. 3:24-CR-00016

Dear judge Ebinger,

My name is Amanda and I am Ivans wife's cousin.
I have known Ivan since I was a little girl. I don't remember much about him since I was only about 9 years old when he officially started to date my cousin Ana. But as the years started to pass by, I was starting to get older and understand a little more of their relationship.
They welcomed their first child the year of 2009. Although him and Ana were not ready for a child that early, he did everything he could to make sure he could provide for his family. Working many hours to make sure they had something to eat. He was very young but having his family by his side is what motivated him to work harder for them.
Once they welcomed their 2nd child, I started to notice things were falling apart between him and Ana. Life was becoming stressful and harder for him because his family was expanding which meant more responsibilities on his end. That's when I noticed they were starting to have problems because of his drinking. It was getting worse day by day. His drinking got so bad that my cousin had to put a stop to it by ending her relationship with him. After he was kicked out from the house, things started to slowly affect him. He was missing his family. He was feeling empty and more alone without them. He realized how much alcohol played a big role of him losing his family and he wanted to change that and he did!
Regardless with how bad things got between him and Ana due to his alcohol addiction, he was such an amazing father to his kids. Always made sure they had something to eat and a place to call home.
We all make mistakes in life. No one is perfect in this world. Ivan is fully aware of his actions and the consequences he has to face but I do believe he is a great man and he is not a danger to the community at all. He's been alcohol free for about a couple years now. The man he is now, is not the man he was before. He is extremely friendly, super supportive, very respectful and kind. Always happy and always in a positive mindset. He's been there for us on our tough times, so we all stand here with him by his side on his tough time.
I want to thank you your honor for taking the time to read our letters.
If you have any questions feel free to reach out either on my cell or email.
Thank you again.

Amanda Pulido Garcia Zamora

Defendant's Exhibit G